The STATE of Ohio, Appellee,

v.

OLAH, Appellant.

[Cite as *State v. Olah,* 146 Ohio App.3d 586, 2001-Ohio-1641.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 01CA007826.

Decided Oct. 24, 2001.

Gregory A. White, Lorain County Prosecuting Attorney, and Jonathan E. Rosenbaum, Assistant Prosecuting Attorney, for appellee.

Robert Cabrera, for appellant.

BAIRD, Presiding Judge.

{¶1} Appellant, Daniel Olah ("Olah"), appeals his conviction from the Lorain County Court of Common Pleas. We affirm.

I

{¶2} On August 25, 1999, Olah was indicted for two counts of rape, in violation of R.C. 2907.02(A)(1)(b), attempted rape, in violation of R.C. 2923.02(A), and gross sexual imposition, in violation of R.C. 2907.05(A)(4). Olah waived his right to a jury trial, and the case proceeded to a bench trial. The state presented testimony from the alleged victim, her mother and grandmother, a clinical counselor, a pediatric nurse practitioner, a caseworker from Lorain County Children Services ("LCCS"), and a polygraph examiner. The defense presented testimony from Olah and his brother, a detective, two caseworkers from LCCS, a psychologist, a family divorce services worker, and the victim's foster mother.

{¶3} On April 3, 2001, the trial court convicted Olah on all four counts, found that Olah was a habitual sexual offender, and sentenced him to concurrent terms of 8 years for each rape, 8 years for attempted rape and 4 years for gross sexual imposition. This appeal followed.

{¶4} The assignments of error will be discussed out of order for ease of discussion.

II

{¶5} "Assignment of Error No. 1:

{¶6} "The trial court erred to appellant's prejudice in violation of appellant's Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution in ruling the minor child competent to testify[.]

{¶7} "A. The trial court abused its discretion to appellant's prejudice by failing to provide a pre-trial taint hearing to determine the reliability of the complaining witness' testimony[.]

{¶8} "B. The trial court erred to appellant's prejudice in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution by the admission of unreliable testimony tainted by prior interrogation, multiple interviews, prompting, and manipulation by the witness' adult care givers[.]"

{¶9} In his first assignment of error, Olah argues that his six-year-old daughter, G.V., was not competent to testify at his trial. Olah asserts that the trial court erred in (1) finding G.V. competent to testify, (2) failing to conduct a pretrial taint hearing, and (3) allowing unreliable testimony from G.V.[1] We disagree.

{¶10} The trial judge has the duty to conduct preliminary determinations as to the competency of all witnesses. *State v. Clark* (1994), 71 Ohio St.3d 466, 469, 644 N.E.2d 331. We are mindful that a trial judge is in a far better position than a reviewing court to gauge the competency of a child witness under the age of ten. The trial court's finding as to competency will not be disturbed absent an abuse of discretion. See *State v. Frazier* (1991), 61 Ohio St.3d 247, 252, 574 N.E.2d 483. An abuse of discretion connotes more than an error of law or judgment, but implies that the judgment can be characterized as unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶11} Pursuant to Evid.R. 601. "Every person is competent to be a witness except: (A) * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

{¶12} "In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." *Frazier*, 61 Ohio St.3d at 251, 574 N.E.2d 483.

---

1. On appeal, Olah argues that G.V.'s testimony regarding their relationship is unreliable. Issues relating to G.V.'s credibility and the weight to be given to G.V.'s evidence will be incorporated into Olah's fourth assignment of error, challenging the manifest weight of the evidence.

{¶13} In the present case, the trial court conducted a voir dire examination of G.V. to determine her competency. In response to the court's questions, G.V. was able to state her name, address, family members, age, birthday, type of school, favorite subject, and teacher's name. G.V. knew that she would be telling a lie if she said that her teacher brought her to court. She also stated that lying was a bad thing and that she might get spanked for lying.

{¶14} Olah argues that G.V.'s response to the question regarding her last birthday demonstrates that G.V. did not have an independent recollection of events. When asked about her last birthday, G.V. responded that she had a party at her Dad's house with her friends. Olah argues that he has not had contact with G.V. since August 1998. Therefore, her last birthday party could not have occurred at her father's house. The record reflects that G.V. was staying with a foster family on the date of her last birthday.

{¶15} Having observed and questioned the six-year-old child, the trial court found her competent to testify. We cannot say that the trial court abused its discretion in finding G.V. competent to testify.

{¶16} In support of his argument requiring the trial court to conduct a pretrial taint hearing, Olah relies on *State v. Kutzli* (Aug. 21, 1995), Stark App. No. 1994CA00379, 1995 WL 557279. Olah asserts that the Fifth District Court of Appeals required "a voir dire hearing to consider the circumstances surrounding the children's statements and whether they were inappropriately influenced." We find that Olah's reliance on *Kutzli* is misplaced.

{¶17} In *Kutzli*, the trial court conducted a hearing outside the presence of the jury to determine a child witness's competency. The trial court determined that the child was competent to testify. However, after the jury was brought into the courtroom the child refused to take the oath, left the stand, and fled to the back of the courtroom. The trial court then determined that the child was not competent to testify. Later in the proceedings, the trial court permitted testimony from a clinical psychologist regarding whether she believed that the child had been sexually abused. On appeal, the court held that the trial court should have conducted a voir dire hearing to consider the circumstances surrounding the child's out-of-court statements that were made to the psychologist. Id. Accordingly, *Kutzli* does not stand for the proposition that a trial court is required to conduct a pretrial hearing to determine the circumstances surrounding a child witness who actually testifies at trial.

{¶18} Olah also relies on several cases from other jurisdictions, including *New Jersey v. Michaels* (1994), 136 N.J. 299, 642 A.2d 1372. In *Michaels* the Supreme Court of New Jersey required a trial court to hold a pretrial hearing concerning the reliability of a child's testimony. No Ohio appellate court has either followed

*Michaels* or independently determined that a pretrial taint hearing is required if a child witness is potentially contaminated. See App.R. 16(A)(7). Therefore, we find that the trial court did not err in failing to conduct a pretrial taint hearing.

{¶19} We find that the trial court did not abuse its discretion in finding G.V. competent to testify and we find that the trial court was not required to hold a pretrial taint hearing. Accordingly, Olah's first assignment of error is overruled.

### III

{¶20} "Assignment of Error No. 2:

{¶21} "The trial court erred to appellant's prejudice in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution by the admission of references to appellant's polygraph examination[.]"

{¶22} In his second assignment of error, Olah argues that the trial court erred in allowing testimony that included references to his polygraph examination.[2] We disagree.

{¶23} At trial, the state presented testimony from William Evans ("Evans"), a polygraph examiner. The record reflects that Evans's direct testimony did not contain any reference to the polygraph examination. Evans testified that LCCS hired him to look into the matter pertaining to Olah and G.V.'s relationship. Evans stated that he met and interviewed Olah. Brian King, a LCCS caseworker, was also present at the interview.

{¶24} Over defense counsel's objection, the state asked Evans "Will you tell the Court what the defendant said to you?" and he responded, "There were a variety of things that were told to me during—during the interview, both relative to the medical condition that Mr. Olah had regarding genital warts and also sexual contact with [G.V.]" Evans's testimony contained several admissions that Olah made during their conversation, including that "Mr. Olah also told me that G.V. sat on his lap while he was wearing a robe with no underwear, and he said that his bare penis touched her privates on basically a daily basis" and that "Mr. Olah also admitted to me that there could have been sexual contact while he was

---

2. We note that Olah filed a motion in limine seeking a general prohibition for the state's witness "from making any references to polygraph examinations." The record reflects that the trial court did not rule on this motion before the trial. When a trial court fails to rule on a motion, the motion will be considered denied. *Georgeoff v. O'Brien* (1995), 105 Ohio App.3d 373, 378, 663 N.E.2d 1348; *Solon v. Solon Baptist Temple, Inc.* (1982), 8 Ohio App.3d 347, 351–52, 8 OBR 458, 457 N.E.2d 858. This presumption has been applied to outstanding motions in criminal cases at the time a judgment of conviction is entered. *State v. Mollick* (Aug. 23, 2000), Lorain App. No. 99CA007381, at 3, 2000 WL 1197027.

wearing boxer shorts, in the event that his penis came out of that boxer short fly and contacted [G.V.'s] bare vaginal sexual privates."

{¶25} On cross-examination, Evans stated that he was a polygraph examiner. He also testified that LCCS hired him to conduct polygraph examinations on Olah and two of G.V.'s uncles. Later in the proceedings, another witness referred to the polygraph examination. This witness was presented in the defense's case in chief and on cross-examination stated that "as part of a case plan, we asked Mr. Olah to take a polygraph test."

{¶26} Olah waived his right to a trial by jury and his case was tried to the bench. A trial judge in a bench trial is presumed to know the law and to consider only the relevant, material, and competent evidence in arriving at a decision. *E. Cleveland v. Odetellah* (1993), 91 Ohio App.3d 787, 794, 633 N.E.2d 1159; *State v. Davis* (1992), 63 Ohio St.3d 44, 48, 584 N.E.2d 1192. There is nothing in the record that would overcome this presumption.

{¶27} Finding no merit in appellant's second assignment of error, we hereby overruled it.

IV

{¶28} "Assignment of Error No. 4:

{¶29} "The trial court erred to the prejudice of appellant when it entered judgment of conviction, where such judgment was against the manifest weight of the evidence."

{¶30} In his fourth assignment of error, Olah argues that his conviction was against the manifest weight of the evidence. We disagree.

{¶31} When a defendant asserts that his conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.

{¶32} R.C. 2907.02(A)(1)(b) states that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." "Sexual conduct" is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus

between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

{¶33} R.C. 2907.05(A)(4) states that "[n]o person shall have sexual contact with another * * * " when the other person is less than thirteen years old. Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶34} R.C. 2923.02(A) provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶35} In the present case, the state presented testimony from six witnesses. G.V.'s mother, Kim, testified that her daughter was born on January 14, 1995. Kim, G.V., and Olah lived together after G.V.'s birth. In May 1996, Kim and G.V. moved out of Olah's apartment. Olah had no contact with G.V. until July 1996, when the court ordered Kim and Olah to participate in a shared parenting agreement. In September or October 1996, Kim and G.V. returned to Olah's apartment. The three lived together until May 1997, when Kim and G.V. again moved out of the apartment.

{¶36} Kim stated that she returned to Olah's apartment out of concern for her daughter. There was no physical relationship between Kim and Olah after she returned. While Kim worked during the day, Olah was responsible for caring for G.V. Kim noticed a change in Olah's health in October 1996. While recovering from a surgery for a deviated septum, Olah became very ill and lost a significant amount of weight. In April 1997, Olah called Kim home from work and informed her that he had tested positive for the HIV virus. A month later Kim and G.V. moved out.

{¶37} Kim testified that she observed unusual behavior from G.V. These behaviors included licking people, kissing with an open mouth, grinding her hips in a sexual way, and rubbing against the family's dog's behind. Kim also noticed that G.V. played with only her Ken doll and baby girl doll.

{¶38} G.V.'s grandmother, Mrs. Dove, testified that she observed G.V. exhibiting several of these same unusual behaviors. Mrs. Dove and her husband contacted the police regarding their suspicion that Olah was sexually abusing G.V.

{¶39} G.V. testified that Olah touched her privates and licked between her legs. However, on cross-examination G.V. stated that her mother had told her what to say because sometimes she forgets. G.V. also testified that her mother told her that Olah did bad things to her.

{¶40} Lynn Skunta, a clinical counselor, testified that she had counseled G.V. (age three) in 1997 and again in 2000. During one of the counseling sessions, G.V. blurted out that her dad "poked her butt with a knife." Skunta testified that G.V. exhibited ritualized play and regressed behaviors. Skunta opined that G.V. was the victim of sexual abuse because G.V. exhibited several behaviors that were consistent with sexual abuse. On cross-examination, Skunta stated that Kim and Mrs. Dove provided G.V.'s personal history, including the fact that Olah had tested positive for the HIV virus. She also testified that testimony from a child who is repeatedly interviewed by several professionals might be tainted.

{¶41} Marsha Thompson, a pediatric nurse practitioner, testified that she examined G.V. on three separate occasions. Thompson diagnosed G.V. as having genital warts located around her anal area. After ruling out non-sexual transmission, Thompson opined that the genital warts were sexually transmitted. On cross-examination Thompson stated that she did not biopsy the warts.

{¶42} The state also presented evidence from William Evans, a polygraph examiner. Evans testified that he was hired by LCCS to meet and interview Olah. Evans stated that Olah made the following admissions: (1) that he had contracted genital warts twenty years ago, (2) that G.V. may have contracted genital warts from him, (3) that G.V. and him bathed together two to four times a month, and (4) that on a daily basis his penis touched G.V.'s genital area while she sat on his lap.

{¶43} Brian King, a LCCS caseworker, was present for two-thirds of Evans and Olah's interview. King testified that Olah explained two different opportunities where his penis would come into contact with G.V.'s genital area: (1) G.V. sitting on his lap while he was wearing only a robe, and (2) G.V. sitting on his lap while he was wearing boxer shorts. Olah was at a loss to explain how he allowed these occasions to repeatedly occur.

{¶44} The defense presented evidence from eight witnesses. Detective Gallion conducted the initial investigation into the alleged sexual abuse in May 1997. Detective Gallion testified that G.V. was unresponsive during the interview at the police station. A couple of weeks after the interview, Mr. Dove called Detective Gallion and placed G.V. on the phone. Detective Gallion described the phone conversation as abrupt statements from G.V. followed by long pauses. He believed that G.V.'s statements were coached. The investigation was eventually closed for lack of evidence.

{¶45} Two LCCS caseworkers testified that G.V. was unable to provide any statements that clearly indicated sexual abuse by a particular person. Donna Freeman, a family divorce services worker, testified that she supervised thirty to forty visits with Olah and G.V. She did not observe anything out of the ordinary regarding the father-daughter relationship. Freeman testified that Kim influenced G.V.'s behavior around Olah. G.V. clung to her mother and cried until Freeman, Olah, and G.V. were in a room without Kim.

{¶46} Mary Ann Teitelbaum, a psychologist, opined that the evidence was inconclusive regarding whether G.V. had been sexually abused. Teitelbaum testified that she met with G.V. five to seven times for fifty-minute sessions. Kim and Mrs. Dove were present for these sessions because G.V. was experiencing difficulty with separation. Teitelbaum believed that G.V.'s mother, grandparents, and other family members were too focused on G.V.'s sexual behaviors. Teitelbaum feared that G.V. was suffering from suggestibility created by the adults in her life.

{¶47} Teitelbaum explained that a guiding questions such as, "Did daddy do that?" can contaminate a child's memory of events. Teitelbaum testified that Mrs. Dove made inappropriate guiding comments during G.V.'s sessions. Once contaminated, Teitelbaum stated that a child no longer has an independent recollection of events. Therefore, a child's memory of events is unreliable after contamination.

{¶48} Olah took the stand in his defense. Olah denied making any admissions to Williams regarding transmitting genital warts to G.V., bathing with G.V., or having daily physical contact with G.V.'s genital area. Olah testified that after his surgery for the deviated septum he became very ill and was unable to care for G.V. He stated that his mother and other family members helped him care for G.V. while Kim was at work. Olah admitted that on one occasion he and G.V. were in the shower together and G.V. accidentally poked his penis. He immediately called for Kim and informed her that G.V. was old enough to know better. Olah testified that that was the first and last time the two showered together.

{¶49} After a careful review of the record, we cannot say that the trial court clearly lost its way and committed a manifest miscarriage of justice in convicting Olah of two counts of rape, attempted rape, and gross sexual imposition. Olah's fourth assignment of error is overruled.

## V

{¶50} "Assignment of Error No. 3:

{¶51} "The trial court erred to the prejudice of appellant in violation of Criminal Rule 29, Article I, Section 10 of the Ohio Constitution and the Due

Process Clause of the Constitution of the United States when it denied [appellant's] motion for acquittal."

{¶52} In his third assignment of error, Olah argues that his conviction was not supported by sufficient evidence.

{¶53} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. *State v. Wolfe* (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689. In making this determination, all evidence must be construed in a light most favorable to the state. Id.

{¶54} This court has held that "a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) *State v. Roberts* (Sept. 17, 1997), Lorain App. No. 96CA006462, at 4, 1997 WL 600669. Because we have determined that Olah's conviction was not against the manifest weight of the evidence, his arguments regarding the sufficiency of the evidence must also fail.

{¶55} Olah's third assignment of error is overruled.

## VI

{¶56} Having overruled Olah's four assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

CARR and WHITMORE, JJ., concur.