JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Reginald Poole appeals from his conviction for two counts of felonious assault in violation of R.C. 2903.11
and the firearm specification included with each count. Prior to trial the appellant pled no contest to having a weapon while under a disability in violation of R.C. 2923.13. The trial court imposed an aggregate sentence of fifteen years incarceration.
{¶ 2} On October 10, 1999, the appellant shot and injured Brian Karr. As a result, Mr. Karr is confined to a wheelchair for the remainder of his life with no hope of ever recovering the use of his legs. The story retold at trial by those present is somewhat complicated and of course varies slightly from person to person. Essentially, Brian Karr, Scott Simmons, Bobby Cole, and Bobby's girlfriend, Selena, went out for drinks at several establishments. After the bars closed, the four returned to the Karr home and were chatting on the front porch on Force Avenue, Cleveland, Ohio.
{¶ 3} The appellant drove down the street in front of the Karr residence with several people in his van. Johnny Bossone, who was riding in the van and also lived on Force Avenue, exited the van and joined the four on the porch. The appellant called out some remark to those on the porch and Cole reacted to this remark as though it was an insult to his girlfriend. Cole approached the van and he and the appellant exchanged heated words. Bossone informed those on the porch that the appellant had been drinking and that he had been known to carry a gun. Both Karr and Simmons approached the van and successfully intervened in the disagreement. As a result, Cole returned to the porch and the appellant drove away.
{¶ 4} Shortly thereafter the appellant returned to Force Avenue and stopped his van in front of the Karr residence. Cole approached the vehicle and the two began to fight. Cole ended up inside the van, straddling the appellant, and with his back to the windshield. Cole attempted to stop the vehicle and the appellant attempted to accelerate. Both Karr and Simmons pursued the van on foot. When that was unavailing, Simmons attempted to follow the van with his automobile. The van struck a tree, careened down the street, and was out of sight before Simmons could follow.
{¶ 5} At some point the appellant placed the vehicle in park, jumped out, stood in a boxing stance, and urged Cole to fight him. Cole, who is much smaller than the appellant, was on the receiving end of the appellant's fists and feet. Cole escaped through a backyard and the appellant pursued him on foot. While hiding from the appellant, Cole overheard the appellant say to Pat[1], I'm going to get my shit, and I'm coming back to get him, and you ain't going to see him again. (T.367). Cole made his way back to Force Avenue and observed Bossone and Karr walking down the street. The two assisted Cole and returned to the Karr residence. Fearing for his life, Cole and Selena departed.
{¶ 6} Simmons also determined that the evening was over and made ready to leave. Karr asked to spend the night at the Simmons' home. The two men entered Simmons' vehicle and set off down Force Avenue. Approximately two houses later, Simmons observed the same red van. The appellant, in the van alone, blocked the street so that Simmons was unable to pass. Simmons backed into a driveway, turned around, and fled in the other direction flooring the gas. During his testimony, Simmons specifically identified the appellant as the driver of the van at this point. Simmons observed the van through the rear view mirror and noted that the van was keeping pace with his car. Simmons and Karr then heard gunshots from an automatic weapon. Simmons and Karr observed muzzle flashes from the driver's side window of the van. Simmons could hear the shots hitting the bottom of the car and the cars parked on the road. Karr screamed that he had been shot and Simmons drove to Marymount Hospital.
{¶ 7} Karr testified that he spent four months in Metro and another three months in therapy. He has constant pain and is on the medications Neurontin, Oxycontin and Baclofen three times a day, seven days a week. He has to move every two hours to prevent bed sores so he only sleeps an hour or two whenever he can. The doctors chose to leave the bullet fragments alone because the fragments were so close to the spine there was a concern that an attempt at removal would cost Karr the use of his arms.
{¶ 8} Simmons was able to identify the appellant when given five photographs by the police officers who were investigating this case. On cross-examination, Simmons stated that the appellant's picture was larger than the other pictures and that it had no numbers behind it. Karr did not know the appellant prior to these events and due to poor eyesight was unable to identify the appellant. Simmons identified the appellant in court as the driver of the van.
{¶ 9} Cleveland Police Officer Renee Bragg and her partner John Prince responded to the scene on Force Avenue. Residents directed them to the Bossone home where Officer Prince spoke with Johnny Bossone. Vehicles parked on the street suffered damage from the shooting. In total, eight shell casings were recovered from the street. Officer Prince testified that this residential street was fully illuminated by street lights and that the shell casings were from an assault rifle. When interviewed by the police, a distraught Simmons identified the appellant as the perpetrator.
Officer James Luby of the scientific investigation unit stated that the shells recovered from the street were located in the space of a city block. Jill Ryan, a civilian SIU employee, identified the finger/palm prints recovered from the exterior driver's side of the red minivan as those of the appellant.
{¶ 10} Homicide Detective Tim Entenok was assigned to this case. He interviewed Bossone and received information that the appellant lived on a nearby street. At 7917 Goodman Avenue the officer learned the appellant's last name. Detective Entenok was unable to speak with Karr due to his medical condition, but did make contact with Simmons. After placing the appellant's name in the department's computer system (LEADS), the red van, a Plymouth Voyager, was located on Dibble Avenue and was registered to the appellant's girlfriend. Gunshot residue was not found on the van by the investigation unit.
{¶ 11} For purposes of the identification of the perpetrator, Detective Entenok presented Scott Simmons with a photographic array. One photograph was of the appellant and the remaining photographs presented to Simmons were of men with characteristics similar to the appellant. Detective Entenok placed post-it notes over the lower half of the photographs so that only the face was visible. Each photograph was assigned a random number. Simmons identified the appellant.
{¶ 12} In his first assignment of error, the appellant asserts that he was rendered ineffective assistance of counsel. The appellant sets forth several bases for this belief: 1) counsel's failure to file a motion to suppress the suggestive photographic array used to identify the appellant; 2) counsel's failure to make a Crim.R. 29 motion for acquittal during trial; 3) counsel's failure to adequately cross-examine witnesses; and, 4) counsel's failure to make a compelling closing argument.
{¶ 13} Ineffective assistance claims are evaluated in a two-step process. First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. State v. Keenan (1998),81 Ohio St.3d 133, 152, citing to Strickland v. Washington (1984),466 U.S. 668, 688. Second, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. See also State v. Davie (1997), 80 Ohio St.3d 311, 331 and State v. Reynolds (1997),80 Ohio St.3d 670, 674. There is a strong presumption that licensed attorneys are competent and that the challenged action is the product of sound trial strategy. State v. Hamblin (1988), 37 Ohio St.3d 153. Even debatable tactics do not constitute ineffective assistance of trial counsel, for it is obvious that nothing is seen more clearly than with hindsight. State v. Clayton (1980), 62 Ohio St.2d 45, 49. A reviewing court must evaluate trial counsel's performance on the facts of the particular case as of the time of counsel's conduct. Strickland, supra.
{¶ 14} In the case sub judice, the appellant contends that Simmons could not have identified the appellant as the driver of the van during the shooting because the van lights would have prevented such an identification. The appellant also argues that the picture of the appellant varied from the other photographs used in the array because his photograph was larger and there were no numbers behind his head as there were on the other photographs.
{¶ 15} The record makes clear that the appellant was represented by two prior attorneys, both of whom filed motions to suppress. Although both motions mentioned the issue of identification, the record does not contain a specific ruling on either motion. When a trial court fails to rule on a motion, the motion will be considered denied. State v. Olah,146 Ohio App.3d 586, 2001-Ohio-1641, 767 N.E.2d 755, citing to Georgeoff v. O'Brien (1995), 105 Ohio App.3d 373, 378, 663 N.E.2d 1348; Solon v. Solon Baptist Temple, Inc. (1982), 8 Ohio App.3d 347, 351-352,457 N.E.2d 858. This presumption has been applied to outstanding motions in criminal cases at the time a judgment of conviction is entered. State v. Mollick (Aug. 23, 2000), Lorain App. No. 99CA007381; State v. Jackson (Sept. 26, 1996), Cuyahoga App. No. 69433.
{¶ 16} Thus, this court must presume the issue of the identification of the appellant, including the photographic array, was brought to the trial court's attention. No formal ruling was issued on the two motions to suppress, and pursuant to the above-cited case law, this court must presume that the motions were denied. The appellant's trial counsel's decision to refrain from bringing the issue of identification before the court a third time falls within the parameters of sound trial tactics.
{¶ 17} Next, the appellant contends that he was rendered ineffective assistance of counsel through counsel's failure to move for an acquittal pursuant to Crim.R. 29 based on the insufficiency of the identification evidence. An examination of the record reveals that after the close of all evidence, the court held a sidebar out of the hearing of the jury. In a journal entry time-stamped August 8, 2001, the court noted that the motion for a Crim.R. 29 acquittal was overruled. This court must presume the regularity of the trial court's proceedings. State v. Baston,85 Ohio St.3d 418; 1999-Ohio-280; 709 N.E.2d 128. Therefore this court must find that counsel made, and the trial court considered, the motion for acquittal.
{¶ 18} Even had counsel failed to make the motion for acquittal, no error was committed and no prejudice accrued to the appellant. In State v. Thompkins (1997), 78 Ohio St.3d 380, the court found that with respect to sufficiency of the evidence, in essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. at 386. In addition, a conviction based upon legally insufficient evidence is a denial of due process. Thompkins, supra, citing to Tibbs v. Florida (1982), 457 U.S. 31, 45. As Justice Cook succinctly stated in the concurrence of Thompkins, a challenge to the sufficiency of evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. Courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.
{¶ 19} In the matter now before this court, Scott Simmons identified the appellant in court as the perpetrator. Simmons also informed the jury as to many of the details of the events of the evening. He also stated that on the evening in question the appellant was the driver of the van; that the driver made a comment that Cole interpreted as an insult; that the driver was very big and that Cole was small; that he stood between the two in an attempt to stop the fight; that the street is well lit with street lights; and that at the time he was taking Karr back to his house the same red van that the appellant had been driving earlier in the evening appeared. More importantly, Mr. Simmons testified that he could see the face of the driver of the van and the driver was the appellant.
{¶ 20} Based upon the testimony of Scott Simmons, it is clear that had the trial court received a Crim.R. 29 motion for an acquittal, the court would have denied the motion. Thus, any failure to make such a motion was harmless error on the part of trial counsel and certainly would not have changed the outcome of the trial. No ineffective assistance of counsel claim may be maintained on such a basis.
{¶ 21} The appellant next contends that counsel's cross-examination of witnesses was so poor as to render him more harm than good. However, counsel's decisions regarding the presentation of evidence is within the realm of trial tactics. State v. MacDonald, 2002-Ohio-3066, Franklin App. No. 01AP-1212, citing to State v. Edwards (Feb. 17, 1998), Clermont App. No. CA97-04-035. Trial tactics that are debatable generally do not constitute a deprivation of effective counsel. State v. Phillips (1995), 74 Ohio St.3d 72, 85, 656 N.E.2d 643. Additionally, "an appellate court reviewing an ineffective assistance of counsel claim will not second guess counsel's strategy in direct and cross-examination of witnesses." MacDonald, supra, citing to Edwards, supra.
{¶ 22} Likewise, counsel's tactics in deciding which issues to argue during closing argument are also considered to be a matter of trial tactics. Closing argument, including the waiver thereof, is a matter of trial strategy. State v. Burke, 73 Ohio St.3d 399, 405, 1995-Ohio-290, 653 N.E.2d 242. Given the strong presumption that trial counsel's performance fell within the range of reasonable assistance, trial counsel's actions must be viewed as tactical decisions, and do not rise to the level of ineffective assistance.
{¶ 23} The appellant's first assignment of error is overruled.
{¶ 24} In his second assignment of error the appellant contends that his conviction is against the manifest weight of the evidence. This contention is based upon the appellant's assertion that the evidence presented did not adequately identify the appellant as the perpetrator. The appellant states that the evidence points to Cole as the guilty party.
{¶ 25} In State v. Nields (2001), 93 Ohio St.3d 6, the court held that, as to the manifest weight of the evidence, the issue is whether there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. State v. Getsy (1998), 84 Ohio St.3d 180, 193-194, citing State v. Eley (1978), 56 Ohio St.2d 169, syllabus. In Thompkins, supra, the court illuminated its test for manifest weight of the evidence by citing to Black's Law Dictionary (6 Ed. 1990) at 1594, Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'
{¶ 26} Thus, as the concurring opinion noted, when deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion. The only special deference given in a manifest weight review attaches to the conclusion reached by the trier of fact. Thompkins, (Cook, J., concurring) citing to State v. DeHass (1967),10 Ohio St.2d 230.
{¶ 27} In the matter at hand, the appellant concocts a scenario in which Cole is angry with his friends for their lack of support and returns to the scene and begins shooting. The appellant further posits that then these old friends and, according to his theory, new adversaries, joined forces to blame the appellant. As evidence of this, the appellant states that Simmons could not have identified the appellant as the driver of the van under the circumstances because the headlights would have blinded Simmons. No jury would be required to accept such a taradiddle.
{¶ 28} The appellant also argues that Cole's failure to timely speak with police, his claim that he overheard the appellant threaten his life, the criminal history of the various witnesses, and the lack of gunshot residue on the van are strong indications that the appellant was not present at the time of the shooting. Each of these issues was presented to the jury during the trial and it was the jury who was in the best position to analyze and interpret the evidence. There was substantial evidence upon which a jury could reasonably conclude that all the elements have been proven beyond a reasonable doubt, including but not limited to, the eyewitness identification of the appellant by Scott Simmons, the testimony of the victim Brian Karr, and testimony of Bobby Cole who candidly related his participation in the evening's events. Each witness retold the story for the jury from his own perspective, but overall, the stories of the three men were basically consistent. The jury was entitled to weigh the evidence and did so.
{¶ 29} The appellant's second assignment of error is overruled.
{¶ 30} The appellant herein also sets forth three assignments of error, September 19, 2002, pro se. In the first assignment of error, pro se, the appellant asserts that he was rendered ineffective assistance of counsel through counsel's failure to: 1) file a motion to suppress the shells found on the street; 2) failure to object to the testimony of witnesses; and, 3) failure to move for an acquittal pursuant to Crim.R. 29.
{¶ 31} The standard for reviewing claims of ineffective assistance was stated in the first assignment of error raised by counsel, see infra. Additionally, the alleged failure of counsel to cross-examine witnesses, present closing arguments to the appellant's satisfaction, and to move for an acquittal was also resolved. The remaining issue raised pro se is counsel's failure to move for a suppression of the shells found on the street. The appellant does not illuminate why this evidence should have been suppressed. Presumably, he believes that the evidence was inadmissible because there was no direct testimony that those specific shells were fired from a specific firearm. However, circumstantial evidence is clearly permissible to support the state's case. See State v. Davis, 76 Ohio St.3d 107; 1996-Ohio-414; 666 N.E.2d 1099, citing to State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus, for the proposition that circumstantial evidence inherently possesses the same value as direct evidence.
{¶ 32} In the second assignment of error, pro se, the appellant argues that his two convictions for felonious assault pursuant to R.C.2903.11 should have been merged for purposes of sentencing because they were allied offenses. The appellant essentially argues that there was no separate animus when shots were fired at Karr and at Simmons.
{¶ 33} R.C. 2941.25(B) states that where a defendant's conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment may contain counts for all such offenses, and the defendant may be convicted of all of them. This court has held that felonious assault is a crime defined in terms of conduct towards another and that where there are two victims, there is a dissimilar import for each person and the two charges of felonious assault are not allied offenses of similar import. State v. Richard (Nov. 10, 1999), Cuyahoga App. No. 74814.
{¶ 34} In State v. Bubose, 2002-Ohio-3020, Mahoning App. No. 00-C.A.-60, the court found that even where the crime is a part of a single course of conduct but there are two distinct victims, a separate animus may exist for each offense. Dubose, citing to State v. Gregory (1993), 90 Ohio App.3d 124, 129, 628 N.E.2d 86; State v. Bonhomme (April 6, 1992), Clermont App. No. CA91-08-058, (consecutive sentences for felonious assault were appropriate where evidence showed that defendant shot at a motor vehicle while aware that it had two occupants); and State v. Lee (Sept. 3, 1998), Franklin App. No. 97APA12-1629, (three consecutive terms for felonious assault were appropriate where defendant fired into a bedroom knowing that there were three people inside).
{¶ 35} The trial court did not err in sentencing the appellant to separate terms of imprisonment and this assignment of error, pro so, is overruled.
{¶ 36} In the appellant's second and third assignments of error, pro se, he contends that R.C. 2941.145, the weapons specification, is as unconstitutional as it is racially discriminatory. As the state points out, the appellant has cited to no supporting case law or statute. This court need not consider an assignment of error which is unsupported by case law or legal authority. Warrensville Heights v. Shaffer, 2002-Ohio-3269. Cuyahoga App. No. 80482, citing to App.R. 16 and App.R. 12.
{¶ 37} The appellant's third assignment of error, pro se is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., CONCURS; COLLEEN CONWAY COONEY, J., CONCURS IN JUDGMENT ONLY.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Pat was a member of the group in the van. Bossone left the van on its first trip down Force Ave. Apparently, when the van left the area two of the other passengers also left the group. The van returned to Force with only the appellant and Pat inside.