[Cite as *Castro v. Castro*, 2013-Ohio-1347.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 98710**

---

# DAVID K. CASTRO, ADMINISTRATOR OF THE ESTATE OF VERA BATES-LUCAS

PLAINTIFF-APPELLANT

vs.

# JOSEPH CASTRO, ET AL.

DEFENDANTS-APPELLEES

---

## JUDGMENT:
### REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Court Division
Case No. 2012 ADV 175321

**BEFORE:** S. Gallagher, P.J., Kilbane, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 4, 2013

**ATTORNEY FOR APPELLANT**

Mark D. McGraw
1370 Ontario Street
Suite 800
Cleveland, OH   44113


**ATTORNEYS FOR APPELLEES**

James H. Hewitt, III
Hewitt Law L.L.C.
The Groh Mansion
3043 Superior Avenue
Cleveland, OH   44114

Matthew T. Fitzsimmons, III
Nicola, Gudbranson & Cooper
25 West Prospect Avenue
Republic Building, Suite 1400
Cleveland, OH   44115

**For Andrea H. Castro**

Andrea Horton Castro, pro se
2163 Rock Mountain Lake Drive
McCalla, AL   35111

**Also listed:**

**For KeyBank**

Karen L. Giffen
Giffen & Kaminski, L.L.C.
1300 East Ninth Street
Suite 1600
Cleveland, OH   44114

SEAN C. GALLAGHER, P.J.:

{¶1} Plaintiff-appellant, David Castro ("David"), Administrator of the Estate of Vera Bates-Lucas, appeals the judgment of the Cuyahoga County Court of Common Pleas, Probate Division, that denied his complaint and dismissed the action. For the reasons stated herein, we reverse the decision of the trial court and remand the matter for a new trial.

{¶2} David brought a concealment action against defendants-appellees, Joseph Castro ("Joseph") and Andrea Horton Castro ("Andrea"), alleging that appellees concealed, embezzled, or conveyed estate assets pursuant to R.C. 2109.50. David and Joseph are brothers, and they are the sons of Vera Bates-Lucas, who is deceased. Andrea is Joseph's wife.

{¶3} Several banks were also named as defendants in the amended complaint. However, Fifth Third Bank and Wells Fargo Bank were voluntarily dismissed from the action, and David represents that KeyBank was inadvertently left in the action.[1] The accounts at issue in this matter shall be referred to using the bank's name followed by the last four digits of the account number.

{¶4} During discovery, David filed a motion to compel answers and responses to discovery, as well as a supplemental brief in support of his motion. David indicated that "[c]ontrary to [Joseph's] response to Request for Production no. 7, he has not provided a

---

[1] KeyBank has not made an appearance on appeal.

copy of any power of attorney executed in his favor by Vera Bates-Lucas." The trial court never ruled on this motion.

{¶5} A hearing was held on June 11, 2012.[2] At the hearing, Joseph testified that his mother Vera lived with him from 1989 until her death in March 2011. Joseph claimed at some point he was given a power of attorney to take care of her financial affairs. Joseph testified that he and Vera drafted the power of attorney. He could not remember when he was given the power of attorney, other than it being after Vera's retirement. He also did not know what powers it gave him. He further testified that it was a standard power of attorney that he printed off the Internet. This document was never introduced at trial, and neither David nor his counsel was provided with a copy of the power of attorney.

{¶6} Vera suffered a stroke in 2008 that affected her manual dexterity, including her ability to write and to walk. She also was no longer driving a car at this time. Vera moved with Joseph to Alabama in March 2009, which was shortly after Joseph had married Andrea.

{¶7} Vera had several joint accounts with Joseph, including KeyBank 1793 (its predecessor account was KeyBank 4685), KeyBank 6122, and Fifth Third 7767. The accounts were referred to as joint accounts, and it is unclear whether there was any right of survivorship, although there was limited testimony that KeyBank 6122 was a joint and

---

[2] At this hearing, the trial court also considered a motion to remove David as the administrator of Vera's estate, which was filed in a separate estate action that is not before us in this appeal. *See Castro v. Castro*, 8th Dist. No. 99037.

survivor account. Vera also had her own account, KeyBank 3488, that was payable on death to David. Joseph had his own personal accounts, Fifth Third 5380 and 6182 (its predecessor account was Fifth Third 2374). Defense counsel stipulated to the accounts that were reviewed.

{¶8} Joseph testified that he did not deposit any of his own money into any KeyBank account. He conceded that Vera's bills would have been paid from the KeyBank accounts and that prior to moving to Alabama there were certain expenses they were splitting. However, he did not pay any of his own bills from the KeyBank accounts. Further, Joseph indicated that after moving to Alabama, Vera did not have to pay any of the bills.

{¶9} It was represented that on May 1, 2006, KeyBank 4685 was closed, and the balance of $62,366.68 was transferred into KeyBank 1793. Joseph testified that he only did as his mother instructed of him. Joseph was unsure if on May 18, 2009, $86,000 was transferred from KeyBank 1793 to KeyBank 6122. Joseph conceded that on October 7, 2009, KeyBank 6122 was closed with a withdrawal of $86,127.94. He was not sure if this money was used to open his own high performance money market account, Wachovia 8516, on or about October 16, 2009.

{¶10} Joseph conceded that on March 28, 2009, he withdrew $80,000 in cash from KeyBank 3488, which is the account that is payable on death to David. He denied putting the funds into his safety deposit box and claimed he put the cash into his 82-year-old mother's hands. He admitted that on July 2, 2010, he visited his safety

deposit box at Fifth Third Bank. On that same date, he deposited $60,000 into his personal account, Fifth Third 6182. Though Joseph denied making this deposit, defense counsel stipulated that Joseph deposited in two transactions $20,000 and $40,000 into his account, Fifth Third 6182. Also on July 2, 2010, Joseph purchased an official check for $40,000 at Fifth Third. Six months later, on January 11, 2011, Joseph deposited the $40,000 official check into Wachovia 1192, which was a joint account with Vera. Defense counsel stipulated to Joseph's deposit of the $40,000 official check he had purchased on July 2, 2010. On January 13, 2011, $32,000 was withdrawn from Wachovia 1192. It was stipulated that on February 3, 2012, Joseph deposited a check made out to cash in the amount of $20,000 into Wachovia 1192. Joseph was unable to account for money that had been withdrawn.

{¶11} During the hearing, the judge questioned why plaintiff's counsel was referencing Joseph's personal accounts and stated they should not matter, indicated that other accounts were joint accounts, and expressed uncertainty as to evidence of concealment. Joseph was evasive in his answers and was unable to recall many details concerning the accounts or to explain what was done with money that was withdrawn or to state the purpose for depositing or transferring the funds.

{¶12} Joseph's wife, Andrea, was paid $5,000 per month for a year to take care of Vera. This was done pursuant to a contract between Andrea and Vera, and to which Joseph signed as a witness. Andrea was a licensed nurse who had worked for the VA. Joseph could not disagree that the funds were paid from Wachovia 8516.

**{¶13}** Joseph also testified that his mother paid one year of mortgage payments as a wedding gift.  The money was deducted from Fifth Third 7767.  Fifth Third 7767 was closed in June 2011.

**{¶14}** Tenisha Smith Bugsby is Joseph's daughter and Vera's granddaughter.  She testified that Vera did not want to move to Alabama because of the relationship Vera had with Andrea.  She also indicated that Joseph told her he only had a medical power of attorney.

**{¶15}** David testified that when he asked Joseph about Vera's will and insurance paperwork, Joseph claimed he did not know where they were located.  David also testified that after November 2010, when he would call to speak with Vera, Joseph would indicate that she was occupied and that he would have her call back, but she never did.  Joseph never informed David about the $80,000 cash withdrawal that had been made from KeyBank 3488, which was the payable-on-death account.  David did not believe this amount of money had been handed to his mother and indicated that Andrea was not caring for Vera at the time this withdrawal was made.  David testified that Joseph told him that, out of the goodness of his heart, he was going to send David $3,000.  David never received this money.  David presented various documents in support of his claims.  The trial court would not admit the bank records proffered by David.

**{¶16}** The trial court issued a judgment entry in which it found "that no proof having been offered to support the Complaint, that the Complaint is hereby denied and dismissed."  The court determined that there was no evidence of undue influence or of

incapacity of the decedent and that "there was no evidence that defendant Joseph Castro concealed, embezzled or conveyed monies from any account held by the decedent." David timely filed this appeal.

{¶17} As an initial matter, we recognize claims for concealing or having wrongfully conveyed away property of an estate inter vivos, pursuant to R.C. 2109.50, are within the probate court's jurisdiction where the property at issue will revert to the estate if the transfers are declared invalid. *See Tewksbury v. Tewksbury*, 4th Dist No. 07CA771, 2008-Ohio-4600, ¶ 18-22; *Bobko v. Sagen*, 61 Ohio App.3d 397, 406-407, 572 N.E.2d 82 (8th Dist.1989). Further, "[a] probate court has jurisdiction to entertain an action against an attorney-in-fact for concealed or embezzled assets withdrawn with a power of attorney." *Burwell v. Rains*, 11th Dist. No. 2004-T-0042, 2005-Ohio-1893, ¶ 15, citing *Fox v. Stockmaster*, 3d Dist. Nos. 13-01-34 and 13-01-35, 2002-Ohio-2824, ¶ 63.

{¶18} David raises four assignments of error for our review. His first assignment of error provides as follows:

> The trial court committed reversible error in finding that plaintiff-appellant had presented no proof the defendants had illegally concealed, embezzled or conveyed away assets of the estate of Vera Bates-Lucas, and in dismissing the complaint.

{¶19} We review the trial court's judgment to determine whether it is against the manifest weight of the evidence. The weight of the evidence concerns "'the inclination of the *greater amount of credible evidence*, offered at trial, to support one side of the issue rather than the other [and] indicates clearly to the jury that the party having the

burden of proof will be entitled to their verdict.'" (Emphasis sic.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. When conducting a manifest weight review, the reviewing court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley* at ¶ 20, citing *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001).

{¶20} This is a concealment action that was brought under R.C. 2109.50, which permits a complaint to be made to the probate court "against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys * * * of the estate[.]" David claims that Joseph unlawfully concealed, embezzled, and conveyed away assets from the estate of Vera Bates-Lucas by diverting substantial sums of money from various bank accounts.

{¶21} A number of the bank accounts at issue were joint accounts under Vera's and Joseph's names, and one of the accounts was a payable-on-death account to David under Vera's name. There was evidence presented at the hearing reflecting that Joseph, who claimed to have a power of attorney, withdrew and/or transferred large sums of money from these accounts, thereby depleting the bank accounts. Thereafter, he made large deposits into his own personal accounts (Fifth Third 6182 and Wachovia 8516) and

another joint account (Wachovia 1192), which he had opened. He also utilized a safety deposit box in the course of certain transactions.

{¶22} While the trial court may not have understood why Joseph's personal accounts were being referenced, it is evident that these were accounts in which some of the funds allegedly were being concealed. Further, insofar as certain accounts may have been omitted from the complaint, it is apparent that the complaint listed nearly all the accounts at issue, including the accounts from which funds had been depleted. It seems as though the trial court was focused on the joint nature of certain accounts and Joseph's claim that he had a power of attorney. Our review reflects that the trial court failed to properly consider the evidence presented and erred in its application of law and the burden of proof in this matter.

{¶23} The Ohio Supreme Court has distinguished rights with regard to joint and survivorship accounts and joint accounts without survivorship, stating as follows:

> [T]he opening of an account in joint and survivorship form shall, in the absence of fraud, duress, undue influence or lack of mental capacity on the part of the depositor, be conclusive evidence of the depositor's intention to transfer to the survivor the balance remaining in the account at the depositor's death.
>
> On the other hand, in order to maintain consistency in the treatment of survivorship rights, we hold that the opening of the account in joint or alternative form without a provision for survivorship shall be conclusive evidence, in the absence of fraud or mistake, of the depositor's intention not to transfer a survivorship interest to the joint party in the balance of funds contributed by the depositor remaining in the account at the depositor's death. Such funds shall belong exclusively to the depositor's estate, subject only to claims arising under other rules of law.

*Wright v. Bloom*, 69 Ohio St.3d 596, 607, 635 N.E.2d 31 (1994). In this case, there was a lack of evidence pertaining to the nature of the joint accounts. Further, even if an account contains a provision for survivorship, it is established that "'[a] joint and survivorship account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.'" *Id*. at 601, quoting *In re Estate of Thompson*, 66 Ohio St.2d 433, 423 N.E.2d 90 (1981), paragraph one of the syllabus.

{¶24} Here, Joseph testified that he did not contribute any money to the KeyBank accounts. Thus, the money in these accounts belonged to Vera during her lifetime. Insofar as Joseph claimed to have a power of attorney and that he only did as instructed by Vera, it was his burden to show that his conduct was free of undue influence or fraud. When a fiduciary relationship exists between the depositor and the beneficiary of a joint and survivorship account, a presumption of undue influence arises and the beneficiary carries the burden to show by a preponderance of the evidence that the transaction was free from undue influence or fraud. *See Kasick v. Kobelak*, 184 Ohio App.3d 433, 2009-Ohio-5239, 921 N.E.2d 297, ¶ 25 (8th Dist.); *Rusnak v. Fleming*, 2007-Ohio-6752, 879 N.E.2d 865, 2007 Ohio Misc. LEXIS 525, ¶ 12 (C.P.); *Mileski v. Petrilli*, 11th Dist. No. 89-T-4188, 1990 Ohio App. LEXIS 1208, * 4-6 (Mar. 30, 1990).

{¶25} Insofar as Joseph created any joint and survivor accounts into which funds were placed, when funds are transferred into a joint and survivorship account under a power of attorney, "the presumption in *Wright* applies only to the funds that the owner of

the funds knew to be in the survivorship accounts." *Gotthardt v. Candle*, 131 Ohio App.3d 831, 837-838, 723 N.E.2d 1144 (7th Dist.1999). Additionally, because he claimed he had a power of attorney, the burden was upon Joseph to account for the money withdrawn from Vera's KeyBank account that was payable on death to David.

{¶26} At the hearing, Joseph offered no explanation for the various transactions that were made and he failed to account for monies that had been withdrawn or transferred into other accounts. Joseph's use of multiple accounts and his shifting monies from one account to another support an inference that he was attempting to conceal the money that was taken. *See Mancz v. McHenry*, 2d Dist. No. 24728, 2012-Ohio-3285, 974 N.E.2d 784, ¶ 71. While he claimed the $80,000 cash withdrawn from the payable-on-death account was placed into his mother's hands, he offered no explanation for the withdrawal or what became of the money. Further, there was evidence to suggest that he placed the money into his safe deposit box and later deposited $60,000 into his personal account. Also, there was evidence that he transferred funds out of the joint accounts, closed several of these accounts, and opened a high performance money market account and a separate joint and survivor account into which he deposited money. Because Joseph stood in a fiduciary relationship with Vera, he had a duty to account for the transactions he was making. The trial court erred by failing to place the burden on Joseph to show that his conduct was free of undue influence or fraud.

{¶27} Joseph also paid Andrea $5,000 per month for the care of Vera. He could not disagree that the funds came from Wachovia 8516, which was a personal account he

opened after closing KeyBank 6122 and withdrawing funds therefrom. A contract was signed with a scribble that Joseph stated was Vera's signature. Joseph signed the contract as a witness and is referred to as Vera's attorney-in-fact. The contract was dated March 11, 2010. Joseph testified that by May 2009, he would take Vera to the bank "if she was in her right mind." There also was testimony from Joseph's daughter suggesting that Vera did not get along with Andrea. No testimony was offered as to the care that was provided or the reasonableness of the amount paid.

{¶28} Self-dealing by a fiduciary creates a presumption that the action is invalid, and an attorney-in-fact is obligated to demonstrate the fairness of his conduct. *Bacon v. Donnet*, 9th Dist. No. 21201, 2003-Ohio-1301, ¶ 30. Joseph failed to offer any evidence to rebut the presumption that he engaged in improper self-dealing and/or unduly influenced Vera.

{¶29} Likewise, there is a presumption that the payments for one year of Joseph's mortgage as a wedding gift was invalid. "Because a fiduciary relationship existed between the decedent and [the donee], the law presumes the invalidity of the gifts. * * * To overcome the presumption, the donee must show * * * that the donor intended to make a gift." *Tewksbury v. Tewksbury*, 4th Dist. No. 07CA771, 2008-Ohio-4600, ¶ 34; *see also Fife v. Beck*, 164 Ohio St. 449, 455-456, 132 N.E.2d 185 (1956).

{¶30} Upon our review, we find the trial court failed to place the appropriate burden upon Joseph and failed to consider and determine the issues in accordance with the appropriate legal standards discussed herein. We also find that the trial court's

decision was not supported by the manifest weight of the evidence. Accordingly, we must reverse the decision of the trial court and remand the matter for a new trial. David's first assignment of error is sustained.

{¶31} David's second assignment of error provides as follows:

The probate court committed reversible error in hurrying through the hearing, cancelling closing argument and denying plaintiff his day in court.

{¶32} We recognize that at times the trial court appeared to move the proceeding along in this matter and did not afford the parties an opportunity to present closing arguments. However, no objection was made during the course of the hearing, and the parties never requested to make closing arguments. Because we have already determined that the action must be remanded for a new trial, we need not engage in any further analysis and deem this assignment of error moot.

{¶33} David's third assignment of error provides as follows:

The probate court abused its discretion and committed reversible error in denying plaintiff-appellant's motion to compel discovery, and also in failing to order defense counsel to produce the power of attorney at the hearing.

{¶34} A review of the record reflects that the trial court never ruled on David's motion to compel discovery. A trial court's failure to rule on a motion is ordinarily presumed to be a denial of that motion for purposes of appellate review. *Sabbatis v. Burkey*, 166 Ohio App.3d 739, 2006-Ohio-2395, 853 N.E.2d 329, ¶ 33 (5th Dist.), citing *State v. Olah*, 146 Ohio App.3d 586, 2001-Ohio-1641, 767 N.E.2d 755 (9th Dist.), fn. 2; *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 223, 631 N.E.2d 150 (1994). We review the denial of a motion to compel discovery for an abuse

of discretion. *State ex rel. V Cos. v. Marshall*, 81 Ohio St.3d 467, 469, 1998-Ohio-329, 692 N.E.2d 198. An abuse of discretion requires an unreasonable, arbitrary, or unconscionable decision. *Id*.

{¶35} In his motion to compel, David stated that he had not been provided with a copy of the power of attorney that had purportedly been executed by Vera Bates-Lucas. Civ.R. 26(B), which sets forth the scope of discovery, provides that in general, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *."

{¶36} The power of attorney was relevant to the action because it shows a fiduciary relationship existed between Joseph and the decedent. Not only does the holder of a power of attorney have a fiduciary relationship with the principal, but also, the holder bears the burden of proof in establishing the fairness of the transaction. *In re Estate of McCauley*, 5th Dist. No. 2011CA00272, 2012-Ohio-4709, ¶ 21. As previously discussed, when a fiduciary relationship exists between the depositor of a joint account and a beneficiary, there is a presumption that the transaction resulted from undue influence, and the burden is on the beneficiary to rebut the presumption by a preponderance of the evidence. *Id*.

{¶37} At trial, Joseph could not recall when he was given the power of attorney, and he did not know what powers it gave him. When asked about various transactions, Joseph often denied the questions or expressed uncertainty. Further, he offered no

evidence to show the fairness of the transactions or to rebut the presumption of undue influence.

{¶38} Because the power of attorney was relevant to the action and the trial court's ruling was prejudicial to David's substantial rights, we find that the trial court abused its discretion in denying the motion to compel. David's third assignment of error is sustained. Upon remand, the trial court is instructed to compel Joseph to produce the power of attorney.

{¶39} David's fourth assignment of error provides as follows:

The probate court committed reversible error in not admitting the bank records proffered by the plaintiff.

{¶40} At the end of trial, David proferred numerous bank records that the trial court did not admit into evidence. These documents were not authenticated during the hearing. Nevertheless, the record reflects that Joseph's counsel stipulated to various accounts at issue. Also, there were certain stipulations, as well as testimony, regarding pertinent transactions.

{¶41} Because this matter must be remanded for a new trial, David shall have the opportunity to properly authenticate and introduce the bank records, or the parties may stipulate to the same, upon remand. Further, nothing herein shall preclude David from seeking leave to amend his complaint to list any omitted bank accounts that are relevant to the action. Accordingly, we find that this assignment of error is moot.

{¶42} Judgment reversed; case remanded for a new trial.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EILEEN T. GALLAGHER, J., CONCUR