DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas that accepted appellant's plea of guilty to one count of murder and sentenced him to fifteen years to life in prison. For the reasons that follow, this court affirms the judgment of the trial court.
{¶ 2} Appellant sets forth two assignments of error:
{¶ 3} "1) Appellant was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution by the failure of the trial counsel to adequately investigate defendant's mental incompetence.
{¶ 4} "2) Appellant was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution by the failure of the trial counsel to develop an insanity defense."
{¶ 5} On November 2, 2001, Guy Horton punched appellant and broke his jaw during a fight that broke out while the men were playing pool. Appellant reported the assault to the police but Horton was never arrested. The record reflects that appellant bought a gun and, on January 9, 2002, walked up to Horton while he was sitting in his car in a parking lot and fired one shot into Horton's chest at close range, killing him. On January 18, 2002, appellant was indicted on one count of aggravated murder in violation of R.C. 2903.01(A) with a firearm specification. Appellant entered a plea of not guilty and, at defense counsel's request, was referred to the Court Diagnostic and Treatment Center for evaluation as to his competency to stand trial.
{¶ 6} On March 18, 2002, after reviewing appellant's evaluation, the trial court found him competent to stand trial. Appellant signed a waiver of time limitation for trial. On October 25, 2002, appellant entered a plea of guilty to murder in violation of R.C. 2903.02(A). The trial court accepted appellant's plea, found him guilty and set the matter for sentencing hearing. However, before sentence was imposed, appellant asked to withdraw his guilty plea and proceed to trial. At a hearing held November 21, 2002, the trial court granted appellant's request and set the matter for trial. On March 25, 2003, appellant withdrew his plea of not guilty and entered a plea of guilty to murder in violation of R.C.2903.02(A). The trial court questioned appellant extensively in compliance with Crim.R. 11. Appellant indicated that he was entering the plea voluntarily and that he understood the written plea he had signed. The trial court accepted appellant's plea and found him guilty. The following background information was placed on the record at the mitigation hearing held prior to appellant's sentencing.
{¶ 7} Toledo Police Officer Andre Board testified that he first had contact with appellant in November 2001, when appellant reported the assault. At that time, appellant did not provide the name of his assailant. Appellant called Board, who was then a detective, approximately ten times but Board was unable to reach appellant at any of the return numbers he left. Board and appellant finally spoke on the phone and appellant provided Guy Horton's name and filed a supplemental police report with Horton's name and address. Board then filed a felonious assault charge.
{¶ 8} Detective Timothy Noble testified he had contact with appellant on one occasion when appellant went to the detective bureau to inquire about the case. Noble stated that appellant was looking for assistance in having Horton arrested.
{¶ 9} Detective Daniel Navarre testified he ran into appellant at the detective bureau in November 2001. Navarre stated appellant told him he had come down several times and expressed frustration that no one was helping him. Appellant appeared agitated. The detective testified appellant asked him what he was supposed to do if Horton came after him. Navarre could not recall his exact words, but stated he essentially told appellant "* * * if he comes after you, you have a right to defend yourself." The detective got the impression appellant might have been threatened by Horton.
{¶ 10} The psychologist who evaluated appellant testified that after administering various diagnostic tests, he concluded appellant's intellectual age is within the range of 10 to 12 years old. He described appellant as having relatively simple problem-solving skills and displaying concrete thinking, which would cause him to look at only one or two issues in a given situation rather than see the overall picture. The psychologist determined appellant was competent to stand trial.
{¶ 11} Appellant testified to his contact with the detectives and to having made about ten phone calls to follow up on the complaint against Horton. He stated he was afraid for his own safety and the safety of his wife and children. Appellant said Detective Navarre told him to do what he had to do to protect himself. He further stated he bought the gun after he talked to Navarre.
{¶ 12} After the mitigation hearing, the trial court proceeded to sentencing and imposed a term of imprisonment of 15 years to life. It is from that judgment appellant appeals.
{¶ 13} In his first assignment of error, appellant asserts trial counsel failed to adequately investigate his mental competence. Appellant argues trial counsel should have asked for an independent psychologist to evaluate his competence. He further asserts there were "clear indicators" in the initial evaluation that he might be found incompetent to stand trial by an independent evaluator and counsel's failure to look beyond the state's evaluation should not be considered reasonable representation.
{¶ 14} To prevail on a claim of ineffective assistance of counsel, appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard requires appellant to satisfy a two-part test. First, appellant must show counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court.Strickland v. Washington (1984), 466 U.S. 668. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent. State v. Hamblin (1988), 37 Ohio St.3d 153. The defendant also must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Michel v. Louisiana (1955), 350 U.S. 91; Strickland, supra.
{¶ 15} We note at the outset that trial counsel did investigate appellant's competence. The evaluation by the Court Diagnostic and Treatment Center was conducted at defense counsel's request. This court has reviewed the report and we find it thoughtful and thorough. Dr. Forgac, the clinical psychologist who examined appellant, asked a wide range of questions going beyond appellant's personal and medical history. In support of his argument, appellant cites Dr. Forgac's statements that appellant reported he had "heard voices," he had felt mentally ill, and "sometimes" felt the need for psychiatric hospitalization. He also noted appellant reported having attempted suicide once by overdosing on aspirin. After reporting those statements by appellant, Dr. Forgac concluded "[t]here was nothing, however, in this man's clinical presentation, including his thought content or stream of thought, which would indicate he was suffering from an emotional disturbance of psychotic proportions."
{¶ 16} Dr. Forgac also administered the Ammons Quick Test, a means of measuring verbal intelligence and providing an estimated IQ score. The doctor reported appellant received a score of 69, which falls at the upper limits of the mildly mentally retarded range, and concluded "[i]ntellectual functioning at this level would not, in itself, render a person not competent to stand trial."
{¶ 17} Dr. Forgac concluded as follows: "* * * [Appellant] was able to converse with me appropriately and he appeared capable of understanding the nature and objectives of the proceedings which have been brought against him. He appeared to have the capacity to disclose circumstances surrounding the alleged offense and to testify relevantly in his own defense. He appeared to have an adequate awareness of the roles of the various participants in the trial, and his awareness approximates that of the average layperson. * * * Mr. Womack did appear to have the capacity to exercise appropriate behavioral control within a courtroom.
{¶ 18} "* * *
{¶ 19} "Taking all the information which was available to me into consideration, it is my opinion that on the day of this evaluation Leo C. Womack was able to understand the nature and objectives of the proceedings which have been brought against him and was capable of assisting an attorney in his own defense."
{¶ 20} A defendant is presumed competent to stand trial. This presumption is rebutted only when a preponderance of the evidence shows that due to his present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against him or of assisting in his defense. R.C. 2945.37(G).
{¶ 21} Furthermore, it has been held where there is no indication that a second examination would reveal a different conclusion, a defendant is hard-pressed to establish ineffective assistance of counsel for failing to request a second exam. In re Anderson, 5th Dist. No. 2001AP030021, 2002-Ohio-776. It has also been held that stipulating to a competency report and failing to request an additional report can fall within the wide realm of reasonable professional assistance. In re Gooch, 2d Dist. No. 19339, 2002-Ohio-6859, at ¶ 29-31. See, also, State v. Connor (July 17, 2000), 12th Dist. No. CA99-08-024 (finding a stipulation to a competency report to be a tactical decision).
{¶ 22} Ohio courts have found that failure to request a second evaluation for a client with a low intelligence quotient does not rise to the level of ineffective assistance because low
{¶ 23} intelligence does not equate with incompetence. In State v.Grubbs (1998), 129 Ohio App.3d 730, the court found that, while a second competency evaluation might have been helpful, defense counsel's failure to request one did not constitute ineffective assistance even though defendant's verbal IQ indicated mild mental retardation and his factual knowledge was poor. See, also, State v. Beach, 7th Dist. No. 03 MA 2, 2003-Ohio-6546.
{¶ 24} Appellant's performance during the evaluation demonstrated that he was capable of understanding the nature and objective of the proceedings and assisting in his defense. Therefore, there is nothing in the competency report that would suggest counsel erred in failing to seek a second evaluation or that a second evaluation would have been outcome determinative. Dr. Forgac's report indicates a thorough examination was performed.
{¶ 25} Upon review of the information available to trial counsel as summarized above, we are unable to find that counsel should have insisted on a second competency evaluation. Additionally, the record fails to show a reasonable probability that, but for counsel's alleged unprofessional errors, the results of the proceedings in the trial court would have been different. See Strickland v. Washington, supra. Accordingly, appellant's first assignment of error is not well-taken.
{¶ 26} In his second assignment of error, appellant asserts trial counsel was ineffective for failing to develop an insanity defense because there was a clear indication that his sanity might be at issue. Appellant asserts that the competency evaluation, coupled with the facts leading up to the shooting, strongly suggest that he may have been insane at the moment he committed the offense. Appellant also asserts that prior to the shooting he was "terrorized" by the victim, who threatened him with death if he cooperated with the police, threatened his family and friends, and followed him around the streets in an effort to intimidate him. Appellant claims those events, coupled with his low IQ, past drug and alcohol use, family mental heath history and frustration, led him to a moment where he could not distinguish right from wrong or appreciate the consequences of his actions.
{¶ 27} R.C. 2901.01(A)(14) states a person is "not guilty by reason of insanity" relative to an offense with which he is charged only if he proves that "* * * at the time of the commission of the offense, [he] did not know, as a result of a severe mental disease or defect, the wrongfulness of [his] acts." [Emphasis added.]
{¶ 28} At appellant's mitigation hearing, Dr. Forgac expressed his opinion that appellant knew right from wrong. Further, the doctor stated in his report "* * * there was nothing * * * in this man's clinical presentation, including his thought content or stream of thought, which would indicate he was suffering from an emotional disturbance of psychotic proportions."
{¶ 29} In State v. Bayes (June 11, 1993), 6th Dist. App. No. 92-OT-030, the defendant testified at his trial that he fled a police officer who tried to stop him for driving erratically because he felt he was being chased by "Ninja warriors" who were trying to hurt him. In response to Bayes' claim that trial counsel should have entered an insanity plea, the court found that "hearing voices" was not enough to establish that counsel was ineffective for failing to pursue an insanity defense. In our case, appellant told Dr. Forgac that he sometimes heard voices but did not say he was hearing them at the time he shot Horton. Further, a low IQ, the inability to correctly reason, having a mother who had a nervous breakdown, and experiencing frustration with the police are not clear indicators that appellant did not know the wrongfulness of his act at the time he committed the offense.
{¶ 30} Therefore, viewing the record in its entirety, we conclude appellant has not presented evidence sufficient to overcome the strong presumption that, under the circumstances, counsel's failure to enter an insanity plea on his behalf might be considered sound trial strategy. Moreover, appellant has failed to show that there is a reasonable probability the outcome of the trial would have been different had counsel followed the course appellant now advances. Accordingly, appellant's second assignment of error is found not well-taken.
{¶ 31} Upon consideration whereof, this court finds appellant was not prejudiced and the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, costs of this appeal are assessed to appellant.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Skow, J., and Parish, J. CONCUR.