[Cite as *State v. Whitacre*, 2023-Ohio-1029.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

CARL E. WHITACRE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case Nos. 21 MO 0008, 21 MO 0009**

---

Criminal Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case Nos. 2019-323, 2021-185

**BEFORE:**
Carol Ann Robb, David A. D'Apolito, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Dave Yost*, Ohio Attorney General, *Atty. Andrea K. Boyd*, Assistant Attorney General, Ohio Attorney General's Office, 30 East Broad Street, 23rd Floor, Columbus, Ohio 43215 for Plaintiff-Appellee and

*Atty. Nicholas Cerni*, 755 Boardman-Canfield Road, Suite M-1, Youngstown, Ohio 44512 for Defendant-Appellant.

Dated:  March 29, 2023

**Robb, J.**

{¶1} Appellant, Carl E. Whitacre, appeals the December 6, 2021 judgment sentencing him in two separate criminal proceedings.

{¶2} In Monroe County Common Pleas case number 2019-323, Appellant was convicted following a jury trial for possession of methamphetamine, a fifth-degree felony in violation of R.C. 2925.11, and one count of illegal conveyance of prohibited items onto the grounds of a detention facility, a third-degree felony in violation of R.C. 2921.36(A)(2). He was sentenced to 18 months in prison for the illegal conveyance, which was ordered to run concurrent to a 12-month prison term for possession of methamphetamine.

{¶3} In Appellant's companion case, Monroe County Common Pleas number 2021-185, Appellant pleaded no contest to one count of menacing by stalking, a fourth-degree felony in violation of R.C. 2903.211(A)(1) and (B)(2)(g), and one count of violating a protective order, a first-degree misdemeanor in violation of R.C. 2919.27. He was sentenced to 18 months in prison for stalking and 180 days in jail for violating the protection order. The sentences were ordered to run consecutive to one another and consecutive to those in case number 2019-323.

{¶4} Appellant appealed in both cases. He raises four assignments of error. He claims the trial court erred by denying his motion to suppress; his right to a speedy trial was violated; he was denied the effective assistance of trial counsel; and his drug offenses are against the manifest weight of the evidence. For the following reasons, we affirm.

<u>Statement of the Case</u>

{¶5} In case number 2019-323, Appellant was indicted by the grand jury September 19, 2019 and charged with four counts: count one, resisting arrest in violation of R.C. 2921.33(A); count two, possession of methamphetamine in violation of R.C. 2925.11(A); count three, vandalism in violation of 2909.05(E), and count four, illegal conveyance of prohibitive items onto the grounds of a detention facility in violation of 2921.36(A)(2). Appellant was arrested and served a copy of the warrant on September 20, 2019. He entered a not guilty plea on September 23, 2019.

<u>Case Nos. 21 MO 0008, 21 MO 0009</u>

{¶6} Counsel for Appellant filed a demand for discovery on September 25, 2019, and on October 4, 2019, Appellant filed a speedy time waiver.

{¶7} Appellant's original defense counsel moved to withdraw on September 3, 2020. The court appointed new counsel. Appellant's newly appointed attorney moved to suppress all evidence seized on or about June 30, 2019 regarding these offenses. The motion to suppress was filed October 29, 2020. The jury trial was scheduled for December 7, 2020.

{¶8} The state opposed the motion to suppress, and the trial court heard the matter at a November 17, 2020 hearing. (Nov. 16, 2020 Response to Motion to Suppress.) The trial court overruled the motion to suppress. (Nov. 25, 2020 Order.)

{¶9} Appellant's second defense counsel moved to withdraw as counsel on December 2, 2020, and Appellant's jury trial was rescheduled. Appellant's third defense counsel noticed his appearance February 1, 2021, and requested additional discovery.

{¶10} The state moved to revoke Appellant's bond March 15, 2021 on the basis that Appellant had committed additional offenses, including menacing, possession of drug abuse instruments, and violating a protection order.

{¶11} Defense counsel moved for an evaluation of defendant's mental condition pursuant to R.C. 2945.371 on April 21, 2021. The trial court granted Appellant's motion and ordered forensic and mental health evaluations. It subsequently found Appellant competent to stand trial as he was able to assist his attorney in the preparation of his defense. (July 7, 2021 judgment.)

{¶12} Appellant moved to dismiss the charges against him on October 4, 2021, alleging a violation of his speedy trial rights. Trial commenced October 5, 2021. The jury returned its verdict finding him guilty of illegal conveyance and possession of methamphetamine on October 6, 2021.

{¶13} Although Appellant filed notices of appeal in both cases, none of his assigned errors arise from case number 2021-185, and as such, we do not detail the facts and procedural posture of the trial court proceedings.

{¶14} The two cases were not consolidated, but Appellant was sentenced on December 6, 2021 at a joint sentencing hearing. On the same date, the court issued one judgment sentencing him in both cases.

Case Nos. 21 MO 0008, 21 MO 0009

**{¶15}** Appellant raises four assigned errors on appeal. Each of his four assignments arise from case number 2019-323, involving his illegal conveyance and possession of methamphetamine convictions.

<u>First Assignment of Error: Motion to Suppress</u>

**{¶16}** Appellant's first assignment contends:

"The trial court erred in denying the Defendant's motion to suppress."

**{¶17}** Appellant's motion to suppress contends that regardless of the fact that Appellant was indicted for vandalism, a fifth-degree felony, his arrest and detention were nonetheless illegal because the initial booking document and incident report from the jail do not reflect this charge or any offense on which he could be lawfully arrested.

**{¶18}** Appellant contends the arresting officer did not have reasonable suspicion that a crime occurred sufficient to place him under arrest. Thus, Appellant claims his arrest was illegal, and his conduct at the time of his arrest and the drugs found during his arrest must be excluded. He also claims the police failed to advise him about the reason for his arrest. (Oct. 29, 2020 Motion to Suppress.)

**{¶19}** The state opposed the motion to suppress, and the trial court heard the matter at a November 17, 2020 hearing. The state argued the arresting officers had probable cause to arrest Appellant for criminal damaging and vandalism consistent with the reports. And, because Appellant was charged with these offenses, his arrest was lawful and suppression was not warranted. (Nov. 16, 2020 Response to Motion to Suppress.) As stated, the trial court overruled the motion to suppress. (Nov. 25, 2020 Order.)

**{¶20}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The trial court judge sits as the trier of fact evaluating witness credibility and weighing the evidence, and on appeal we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Upon accepting the facts as true, this court "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.* Whether there

was probable cause to arrest is a legal issue that we review de novo. *Columbus v. Horton*, 10th Dist. Franklin No. 13AP-966, 2014-Ohio-4584, ¶ 13.

> The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, particularly describing the place to be searched, and the persons or things to be seized." Article I, Section 14 of the Ohio Constitution contains almost identical language, and we have interpreted it as affording at least the same protection as the Fourth Amendment.

*State v. Hoffman,* 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11, citing *State v. Robinette,* 80 Ohio St.3d 234, 238-239, 685 N.E.2d 762 (1997).

> "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801 (1991). ' "[W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case." ' (Brackets sic.) *South Dakota v. Opperman,* 428 U.S. 364, 375, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), quoting *Cooper v. California,* 386 U.S. 58, 59, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996).

*State v. Leak,* 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 13-15.

{¶21} "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." (Footnote omitted.) *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507 (1967).

{¶22} One exception to the warrant requirement is a search incident to an arrest, which allows law enforcement to discover weapons and seize evidence to prevent its destruction. *State v. Dingess*, 10th Dist. Franklin No. 01AP-1232, 2002-Ohio-2775, ¶ 9, citing *State v. Mathews*, 46 Ohio St.2d 72, 346 N.E.2d 151 (1976) and *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034 (1969).

> [A] police officer has reasonable or probable cause to arrest when the events leading up to the arrest, "viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause. *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Moreover, probable cause exists when there are facts and circumstances within the police officer's knowledge that are sufficient to warrant a reasonable belief that the suspect is committing or has committed an offense. *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

*State v. O'Neill*, 3d Dist. Allen No. 1-14-21, 2015-Ohio-815, 29 N.E.3d 365, ¶ 38.

**{¶23}** In determining whether the police had probable cause to arrest an individual, appellate courts consider whether police at the moment of the arrest had sufficient information derived from a reasonably trustworthy set of facts to cause a prudent person to believe that the suspect committed an offense. *State v. Brooks*, 11th Dist. Lake No. 2011-L-049, 2013-Ohio-58, ¶ 27. This determination is based on the totality of the facts and circumstances at the time. *Id.* While probable cause means more than bare suspicion, it means less than evidence that would justify conviction. *United States v. Thomas*, 11 F.3d 620, 627 (C.A.6, 1993).

**{¶24}** Patrol Sergeant Kevin Warner testified first at Appellant's suppression hearing. Warner was working for the Monroe County Sheriff's Department when he responded to a call regarding Carl Whitacre. Appellant's mother called the police complaining about damage Appellant had caused to her home. (Tr. 13-14.) When Warner arrived, Appellant's father showed him their wi-fi box outside with the wires cut off. Appellant's father then took Warner inside the residence to show him additional damage. Warner observed panels were taken off of the furnace and there was a clump of wires, which had been cut. He observed cut wires to electronics inside and outside. (Tr. 15-16.)

**{¶25}** The state asked Warner why he arrested Appellant, who explained that Appellant's parents wanted to press charges for the damage done to their property. (Tr. 16-18.) Warner's body camera footage was played at the hearing. At the beginning of the footage, state's exhibit A, Appellant can be seen standing near his parents. His

Case Nos. 21 MO 0008, 21 MO 0009

mother and father advise the officer that he will not leave and has been "tearing stuff up" in their house.

**{¶26}** Appellant's father described how Appellant "tore" their wi-fi out; how he turned the breakers off; threw parts of the wi-fi box into the yard; and tore something off the wall which is now missing. He described Appellant suffering from paranoia and taking electronics apart. He said Appellant put a pie in the bottom of their furnace. He also described how Appellant, on a different date, "tore the dash out," presumably from a vehicle and cut a light down in his building. Appellant's father then took Warner into the home and showed him where something was taken off of his wall and a television that was out in the rain and was still wet. (State's exhibit A.)

**{¶27}** Appellant's mother repeatedly asked Warner to "pink slip" Appellant, meaning taking him into custody for mental health reasons, but Warner explained he could not do this unless Appellant was posing an immediate threat. Throughout the footage, Warner inquired if Appellants' parents wanted to press charges against him for the damage to their property. Warner asked them both in Appellant's presence and privately. Toward the end of the footage, his parents informed Warner they wanted to press charges against Appellant for the damage. At that point, Deputy Copley began to place Appellant under arrest, and a struggle ensued. (State's exhibit A.)

**{¶28}** Appellant then repeatedly yelled and asked why he was being arrested. In response, someone said because of the property damage and "now resisting" arrest. Previously during the footage, Appellant's parents told Warner about the property damage in front of Appellant, to which Appellant responded, "prove it," "find it," and "there's no proof." (State's exhibit A.)

**{¶29}** As Appellant was being placed into the police cruiser, one of the officers can be heard telling Appellant's parents they need to go to the police station the next day to provide written statements. (State's exhibit A.)

**{¶30}** Warner explained that his stop regarding Appellant occurred at the conclusion of his shift for the day, after midnight. He drove Appellant to the jail and went home for the night. After Warner delivered Appellant to the jail, Deputy Copley filled out the booking intake report regarding Appellant. Warner explained on cross-examination that he planned to charge Appellant with criminal damaging. He said the criminal

damaging charge did not get listed on the booking sheet because Warner did not fill it out. (Tr. 36-37.)

**{¶31}** About three days after Appellant's arrest, Appellant was charged with criminal damaging. (Tr. 52.) This charge was not listed in the original booking sheet because Deputy Copley forgot to include it. Nonetheless, Warner confirmed the criminal damaging charge was the reason he had arrested Appellant based on the destruction and damage to his parents' personal property.

**{¶32}** Deputy Copley also testified. He said he forgot to put the criminal damaging charge in the report when he submitted the charges, but Copley believed they had probable cause to arrest Appellant for criminal damaging. (Tr. 84-85.) Appellant was indicted on September 19, 2019 and charged with vandalism, among other offenses.

**{¶33}** The trial court overruled the motion to suppress. It explained in part:

Sgt. Warner's body cam footage provides sufficient probable cause for property damage charges. The charges were discussed off and on for approximately one half hour, damage to the home was shown on camera, and Carl F. Whitacre requested the charges be filed. Both Sgt. Warner and Deputy Copley testified under oath that the Defendant was arrested for the damage to the property. This Court finds said testimony to be credible and that at the time of the Defendant's arrest, probable cause existed for the property damage charge.

(Nov. 25, 2020 Order.)

**{¶34}** As the trial court held, the evidence shows the officers had sufficient information derived from a reasonably trustworthy set of facts to cause a prudent person to believe Appellant had damaged his parents' personal property. According to Warner, this was the reason for the call. Thereafter, Appellant's parents and Warner repeatedly referenced the damaged property throughout the footage, which was played during the hearing. Appellant was present when his parents decided to press charges against him for the damage. He was told he was being arrested for the damage to their property, and the property damage was discussed throughout the footage in Appellant's presence. Thereafter, during the course of his arrest, Appellant is told he is being arrested for the

damage to his parents' property.  He then resisted and was informed he was going to be charged for this as well.

{¶35}  Because the trial court's findings of fact are supported by competent, credible evidence, we agree with the trial court's decision overruling Appellant's motion to suppress.  Thus, Appellant's first assigned error lacks merit.

Second Assignment of Error:   Speedy Trial

{¶36}  Appellant's second assignment contends:

"The trial court erred in denying the Defendant's motion to dismiss."

{¶37}  An appellate court's review of a speedy trial claim is a mixed question of law and fact.  *State v. High*, 143 Ohio App.3d 232, 242, 757 N.E.2d 1176 (2001).  We defer to the trial court's findings of fact if they are supported by competent, credible evidence and independently review whether the trial court correctly applied the law.  *Id*.

{¶38}  Ohio recognizes both a constitutional and a statutory right to a speedy trial. *State v. King*, 70 Ohio St.3d 158, 161, 637 N.E.2d 903 (1994).  The prosecution and the trial court are required to try an accused within the time frame provided by statute.  *State v. Singer*, 50 Ohio St.2d 103, 105, 362 N.E.2d 1216 (1977).

{¶39}  R.C. 2945.73(B) states:   "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code."

{¶40}  R.C. 2945.71(C)(2) provides the timeframe for a defendant's right to a speedy trial based on the level of offense and states in part:  "A person against whom a charge of felony is pending * * * [s]hall be brought to trial within two hundred seventy days after the person's arrest."

{¶41}  R.C. 2945.71(E) states:  "For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."  R.C. 2945.72 lists tolling events that extend the period of time in which the state must bring a defendant to trial.

{¶42}  Appellant moved to dismiss on speedy trial grounds the day before his trial commenced.  He alleged he was arrested June 30, 2019 on the identical allegations and

was detained until posting bond on July 16, 2019. This case was dismissed on July 24, 2019. Appellant claimed dismissal on speedy trial grounds was warranted based on the significant period of time that had passed and the application of the triple-count provision. He alleged his case had been pending for more than 828 days before trial.

**{¶43}** The state opposed his motion and pointed to numerous tolling events and that Appellant filed a written waiver of his speedy trial rights. The trial court overruled the motion. (Oct. 5, 2021 Tr. 9-11.) The record shows Appellant's right to a speedy trial was not violated.

**{¶44}** The state had 270 days from the date of Appellant's arrest to bring him to trial, absent applicable tolling periods. R.C. 2945.71(C)(2). The defense alleged the burden was on the state to establish he was brought to trial in time. When a defendant requests discharge on speedy trial grounds and demonstrates a trial did not occur within the speedy trial time limit, the defendant has made a prima facie case for discharge. *State v. Camelin,* 4th Dist. Ross No. 18CA3642, 2019-Ohio-1055, ¶ 11; *State v. Kist*, 173 Ohio App.3d 158, 2007-Ohio-4773, 877 N.E.2d 747, ¶ 22 (11th Dist.). The state has the burden to show actions or events chargeable to the accused under R.C. 2945.72 have extended the time to bring him to trial. *State v. Howerton*, 4th Dist. No. 20CA2, 2021-Ohio-913, 168 N.E.3d 861, ¶ 12.

**{¶45}** Thus, we examine the period between the date of Appellant's arrest until October 5, 2021, the date of his trial, to determine how many days accrued against the state for speedy trial purposes. *State v. Joy*, 7th Dist. Columbiana No. 96 CO 72, 2000 WL 288519, *2, citing *City of Oregon v. Kohne*, 117 Ohio App.3d 179, 690 N.E.2d 66 (1997) ("In reviewing a claim that a defendant's right to a speedy trial was violated, a reviewing court, 'merely counts the days chargeable to either side and determines whether the case was tried within the time limits,' imposed by the * * * statute.").

**{¶46}** The record does not establish whether Appellant was detained from June 30, 2019 until July 16, 2019 or if the initial case against him was dismissed as Appellant contends. Nevertheless, the state claims that his speedy trial rights were not violated.

**{¶47}** When a subsequent charge is based on the identical facts as a charge that was previously dismissed, the defendant must be brought to trial within the applicable statutory speedy-trial limit for the initial arrest or service of summons. *State v. Justice*, 49

Ohio App.2d 46, 48, 358 N.E.2d 1382 (1st Dist.1976). The time after the dismissal and before the subsequent indictment is not counted against the state unless the defendant is being held in jail or released on bail. *State v. Broughton*, 62 Ohio St.3d 253, 581 N.E.2d 541 (1991). "[T]he speedy-trial statute shall run against the state only during the time in which an indictment or charge of felony is *pending.*" (Emphasis sic.) *Id.* The defendant's subsequent arrest on the later indictment based on the same facts is when the speedy-trial period begins to run again. *Id.*

**{¶48}** The state agrees the triple-count provision under R.C. 2945.71(E) applies beginning from the day after Appellant's arrest until the date he was released on bond, July 16, 2019. Thus, these 15 days count as 45 days against the state for speedy trial purposes. The initial case was then dismissed July 24, 2019, which count as an additional seven days chargeable against the state. Because he was not detained at the time, the triple-count provision does not apply. Thus, at this juncture, 52 speedy trial days passed, or 45 plus seven.

**{¶49}** Appellant was then indicted by the grand jury September 19, 2019 and charged with four counts. He was arrested and served with the warrant September 20, 2019. He entered a not guilty plea on September 23, 2019. Counsel for Appellant filed a demand for discovery September 25, 2019, and on October 4, 2019, Appellant filed a speedy time waiver. Thus, Appellant's speedy trial time ran from September 21, 2019 through September 25, 2019 for an additional four days and a total of 56 speedy trial days. When the state responded to the discovery request is not readily apparent. Regardless, Appellant filed a written waiver of his speedy time on October 4, 2019. This time waiver was filed on the same date and in conjunction with the trial court's order granting Appellant's request for transfer to a residential treatment program. (Oct. 4, 2019 Judgment.) The waiver is not limited in scope or time. (Oct. 4, 2019 Time Waiver.)

**{¶50}** Even assuming there was no defense discovery request, the number of days from September 21, 2019 until October 4, 2019 is 13. Thirteen plus 52 equals 65 speedy trial days. Thus, 65 speedy trial days chargeable to the state passed before Appellant's trial commenced, and as such, his statutory speedy trial argument lacks merit.

**{¶51}** Appellant's motion for discharge on speedy trial grounds does not contend Appellant's federal constitutional right to a speedy trial was violated. He appears to raise this argument for the first time on appeal.

> In *Barker v. Wingo* (1972), 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101, the Supreme Court set forth a balancing test that considers the following factors to determine whether trial delays are reasonable under the Sixth and Fourteenth Amendments to the United States Constitution: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

*State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 38.

**{¶52}** Notwithstanding, and as stated, Appellant filed a waiver of his speedy trial right early in the proceedings. An accused's express written waiver of his statutory rights to a speedy trial, made knowingly and voluntarily, also constitutes a waiver of his speedy trial rights guaranteed by the United States and Ohio Constitutions. *State v. King*, 70 Ohio St.3d 158, 160, 637 N.E.2d 903 (1994); *State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, 971 N.E.2d 937, ¶ 19. Consequently, this aspect of his assignment of error lacks merit as well. In light of the foregoing, this assignment of error is overruled.

Third Assignment of Error: Effective Assistance of Counsel

**{¶53}** Appellant's third assignment of error asserts:

"Appellant was deprived his Sixth Amendment right to effective counsel."

**{¶54}** Appellant argues he was denied the effective assistance of trial counsel because his attorney stipulated to the report of the doctor who conducted his competency exam. Appellant claims the report has internal conflicts which should have been challenged on cross-examination at a hearing.

**{¶55}** To prevail on a claim for ineffective assistance of counsel, a party must demonstrate (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability, were it not for counsel's errors, the result of the proceedings would have been different. *State v. Hope*, 2019-Ohio-2174, 137 N.E.3d 549, ¶ 88 (11th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 669, 104 S.Ct. 2052 (1984).

**{¶56}** In Ohio, every properly licensed attorney is presumed competent, and a defendant bears the burden to prove otherwise. *Hope, supra,* at ¶ 89, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). Prejudice is established by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

**{¶57}** If an argument can be disposed of by showing a lack of prejudice, there is no need to consider whether trial counsel's performance was deficient. *Id.* at 695-696.

**{¶58}** "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted). *State v. Mitchell,* 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31.

> A defendant is *presumed to be competent to stand trial*. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court *shall* find the defendant incompetent to stand trial * * *.

(Emphasis added.) R.C. 2945.37(G).

**{¶59}** On April 21, 2021, Appellant moved for a mental health evaluation seeking a determination as to his competence to stand trial. An initial hearing on the issue was held, and the trial court ordered Appellant to undergo an evaluation to determine his competence to stand trial; mental condition at the time of the offenses; and his ability to assist counsel and the need or applicability of a plea of not guilty by reason of insanity. The state did not oppose Appellant's motion. (April 29, 2021 Judgment.)

{¶60} On July 6, 2021, the mental health evaluations were filed under seal. Another hearing was held July 7, 2021, and the court concluded Appellant was competent to stand trial; was able to assist his attorney in his defense; and "that at the time, absent the effects of mood-altering drugs, did know the wrongfulness of the acts * * * charged in the Indictment." The court held a hearing on the matter and noted defense counsel and the state's attorney stipulated to the findings in the doctor's report. There was no other evidence offered on the issue of competency. (July 7, 2021 Judgment.)

{¶61} Appellant's competency evaluation was conducted by Dr. Daniel Hrinko, Psy.D., on two separate dates for a total of five hours. Dr. Hrinko also interviewed Appellant's mother, had a meeting with Appellant's attorney, and reviewed the prosecutor's file and Appellant's medical records. Dr. Hrinko submitted two reports, one regarding Appellant's competence to stand trial and the other regarding his mental health status at the time of the offense.

{¶62} The competency to stand trial report shows the following. Appellant graduated from high school, obtained an associate's degree, and completed additional courses toward a bachelor's degree. Appellant has had ongoing treatment for substance abuse and mental health issues. (Competency evaluation.)

{¶63} Dr. Hrinko identified Appellant as appearing to have an "above average intellectual capacity which is consistent with his reports of employment and academic success." Appellant was described as being "able to grasp abstract concepts and discuss hypothetical situations pointing out how, in his opinion, law enforcement has violated his constitutional rights citing specific constitutional amendments, many statutes of the Ohio Revised Code, and policies and procedures of law enforcement." (Competency evaluation 4 of 12.)

{¶64} Regarding the ability to assist with his defense, Appellant was noted as being able "to provide a thorough and detailed discussion of the mechanics of a plea bargain. He stated that he has been offered this possibility but continues to reject it 'based on principle' because 'I am not guilty. They fabricated all of this to stop me from talking about how corrupt they are.'" (Competency evaluation 10 of 12.) Dr. Hrinko also explained how he reviewed pleadings drafted by Appellant and emphasized how he used abstract ideas and complex terms in his writing, which showed no indications of

"significant impairment in cognitive abilities." (Competency evaluation 11 of 12.) Dr. Hrinko concluded Appellant does not show any intellectual disability, but he is "mentally ill suffering from mild to moderate distortions of thought including paranoia and the use of strained logic when developing explanations for the difficulties he is facing." (Competency evaluation 11 of 12.) Notwithstanding having certain mental health issues, Dr. Hrinko concluded Appellant was currently capable of understanding the nature and objective of the proceedings against him and he was capable of assisting in his defense. These conclusions satisfy R.C. 2945.37(G).

**{¶65}** The trial court held a hearing and overruled Appellant's motion, finding him competent to stand trial. It noted the state and defense stipulated to the doctor's findings in his report and no further evidence was offered on the issue of competency to stand trial. It held, based on the preponderance of the evidence, Appellant was competent to stand trial and "is able to assist his attorney in the preparation of his defense." (July 7, 2021 Judgment.) While it is evident Appellant suffered from some mental health issues, the trial court nonetheless concluded he was competent consistent with the presumption and standards set forth in R.C. 2945.37(G).

**{¶66}** As stated, Appellant claims the examining doctor's report has internal conflicts which should have been vetted. As a consequence of this alleged deficiency, Appellant seems to contend the court would have found him incompetent to stand trial and unable to assist his attorney in his defense had his trial attorney challenged the doctor's report. We disagree.

> Incompetency is * * * the defendant's inability to understand " * * * the nature and objective of the proceedings against him or of presently assisting in his defense." R.C. 2945.37(A). Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel.

*State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986).

**{¶67}** Consistent with R.C. 2945.371(H)(3), the report included the examiner's findings and the facts in reasonable detail on which the findings are based. The examiner concluded Appellant was capable of understanding the nature and objective of the

proceedings against him and in assisting the defense. Although Appellant's counsel was permitted under subsection R.C. 2945.371(K) to call other witnesses and present other evidence on competency, there is no requirement to do so. Further, Appellant does not identify any evidence which should have been introduced and was not.

**{¶68}** Further, stipulations to evidence may fall within the "'wide range of reasonable professional assistance.'" *In re Gooch*, 2nd Dist. Montgomery No. 19339, 2002-Ohio-6859, ¶ 30, quoting *State v. Green*, 66 Ohio St.3d 141, 148, 609 N.E.2d 1253 (1993). Other courts have concluded that an attorney's decision to stipulate to a competency evaluation does not constitute the denial of reasonable professional assistance. *State v. Womack*, 6th Dist. Lucas No. L-04-1092, 2005-Ohio-2689, ¶ 21, citing *State v. Connor,* 12th Dist. No. CA99-08-024 (July 17, 2000) (finding a stipulation to a competency report a tactical decision).

**{¶69}** Upon review, we find no error with trial counsel's stipulation to the competency evaluation. Appellant was evaluated during a period of five hours and on two separate dates. The doctor also interviewed Appellant's mother and spoke with his lawyer before issuing his reports. Although the doctor noted Appellant's mental health issues, there is no indication he was not able to understand the nature of the charges against him or he could not assist his counsel with his defense. To the contrary, the report highlighted Appellant's strong cognitive abilities and advanced education.

**{¶70}** While not expressly relied on by the trial court at this stage of the proceedings, Appellant's intellect is also evident from the body camera footage played during his suppression hearing. During the footage, Appellant can be seen and heard articulately enunciating his rights and concerns challenging the basis for his arrest and regarding his legal rights relative to his child both before and during his arrest. (November 17, 2020 Tr. state's exhibit A.)

**{¶71}** When judging professional decisions of counsel, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. 2052. Appellant's attorney was in a better position to determine if Appellant understood the trial process and was able to assist in the defense. *See State v. Williams,* 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446, ¶ 63; *State v. Spivey*, 81 Ohio St.3d 405, 410-411, 692

N.E.2d 151 (1998). In light of the foregoing, we find Appellant's attorney's decision to stipulate to the report was reasonable.

{¶72} Moreover, Appellant has not directed our attention to anything tending to show that had counsel cross-examined Dr. Hrinko, Appellant would have been found incompetent to stand trial. *See State v. Russell*, 5th Dist. Ashland No. 18-COA-021, 2019-Ohio-692, ¶ 28. The doctor's testimony would have presumably been consistent with his report. Accordingly, we cannot conclude the result of the proceeding would have been different. This assigned error lacks merit.

<u>Fourth Assignment of Error: Manifest Weight of the Evidence</u>

{¶73} Appellant's fourth and final assignment of error asserts:

"The Appellant's conviction was against the manifest weight of the evidence."

{¶74} This assignment of error challenges Appellant's convictions for illegal conveyance of drugs onto the grounds of a correctional facility and possession of methamphetamine as against the manifest weight of the evidence.

{¶75} A manifest weight review requires us to review the evidence and to determine whether this is an exceptional case in which it is patently apparent the jury lost its way. *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541 (1997). The reversal of a jury's verdict on manifest weight grounds requires a unanimous concurrence of all three judges. *Id.*

> The * * * weight of the evidence addresses the evidence's effect of inducing belief. * * * In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? * * * [A]lthough there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. * * * 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' * * *.

*State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25.

{¶76} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "A jury is free to believe all, some, or none of

the testimony of each witness appearing before it." *State v. Ellis,* 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18, citing *Iler v. Wright,* 8th Dist. Cuyahoga No. 80555, 2002-Ohio-4279, ¶ 25. A finding an offense is not against the manifest weight of the evidence necessarily includes a finding the charged offense is supported by sufficient evidence. *In re G.H.*, 11th Dist. Lake No. 2015-L-037, 2015-Ohio-5339, ¶ 20; *State v. LaFever*, 7th Dist. Belmont No. 02 BE 71, 2003-Ohio-6545, ¶ 10; *State v. Olah*, 146 Ohio App.3d 586, 597, 767 N.E.2d 755 (9th Dist. 2001).

**{¶77}** Appellant was convicted of possession of methamphetamine in violation of R.C. 2925.11(A), which states: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

**{¶78}** He was also charged with one count of illegal conveyance of prohibited items onto the grounds of a detention facility, a third-degree felony in violation of R.C. 2921.36(A)(2), which states:

> (A) No person shall knowingly convey * * * onto the grounds of a detention
> facility or * * * the department of rehabilitation and correction any of the
> following items:
> * * *
> (2) Any drug of abuse, as defined in section 3719.011 of the Revised Code
> * * *.

**{¶79}** Appellant argues each of these convictions is against the manifest weight of the evidence as no logical juror would have found the drugs belonged to him based on the nature of where and how the drugs were found. We disagree.

**{¶80}** The offenses in case number 2019-323 were decided by a jury. The trial was held October 5 and 6, 2021. At the beginning of trial, the state dismissed the other pending charges in this case, i.e., resisting arrest and vandalism. The trial evidence shows the following.

**{¶81}** Sergeant Kevin Warner of the Monroe County Sheriff's Office testified first for the state. He took Appellant to jail on the morning of his arrest and handed him over to corrections officers there. After they processed Appellant, the officers returned and gave Warner a plastic baggie containing a white powdery substance, state's exhibit five.

(Tr. 136.) The contents were sent to the Ohio Bureau of Criminal Investigation (BCI) and tested.

**{¶82}** Before they arrested Appellant, Deputy Copley conducted a pat down of the outside of his clothes, which is a less invasive search than that conducted when a person is booked upon intake. Copley was no longer with the department at the time of trial. He had been terminated, but Warner did not know why he was fired.

**{¶83}** Erin Miller is a forensic scientist at BCI, and she testified that she tested the substance found in the baggie after Appellant's arrest. She determined it contained methamphetamine. It weighed 1.20 grams. (Tr. 156-164.)

**{¶84}** Phillip Childress, who is now the assistant jail administrator, also testified. Childress assisted with Appellant's intake on the morning of his arrest. Childress was a correctional officer at the time. Depending on the circumstances, the officers may conduct a strip search upon intake, but they do not conduct cavity searches. They will do a strip search if the person is being brought in on drug charges. The officers did not perform a strip search or a cavity search of Appellant when he was arrested. The officers asked Appellant whether he had "anything" on him at the time of his intake, and he said no. Appellant then asked to use the bathroom. (Tr. 168-174.)

**{¶85}** State's exhibit 2 is the body camera footage from Deputy Childress, which was admitted and played at trial. Appellant can be seen sitting on the toilet for more than ten minutes. It clearly shows Appellant pulling toilet paper off the roll nine different times and wiping nine times before an officer can be heard telling Appellant, "I think you got it brother." (State's exhibit 2.)

**{¶86}** Childress testified that Appellant's behavior was suspicious based on his excessive sweating and "using that excessive amount of toilet paper that he did, that was definitely a key indicator that there was probably something in that toilet." (Tr. 181.) There was vomit in the toilet from a prior inmate, which had not been cleaned out or flushed.

**{¶87}** After Appellant used the toilet, Childress pulled the baggie containing a white powder from the toilet. The baggie was "inside toilet paper wrapped up." (Tr. 190.)

**{¶88}** The police scanned Appellant's body with an x-ray machine after he used the toilet. (State's exhibit 1.) This scan would have revealed if he had drugs on him had it been done beforehand.

Case Nos. 21 MO 0008, 21 MO 0009

{¶89} Sergeant Justin Mozena also testified, and his police body camera footage was played at trial. Mozena assisted with Appellant's intake as well. Upon booking Appellant, he was read his rights, and then Appellant asked to use the bathroom. Mozena's body camera footage shows Appellant entering the bathroom after his handcuffs are removed. He can be seen sitting down on the toilet and putting his hands between his legs toward the front of his body. At the same time, his face is seen straining and he is making an uncomfortable and painful expression. (State's exhibit 1.)

{¶90} Appellant is still on the toilet when he is told to finish. Appellant is then seen taking his shirt off. He sits on the toilet for more than ten minutes during the footage. He then can be seen wiping his backside an excessive number of times before an officer told him, "I think you got it, brother." (State's exhibit 1.) Minutes later, the officers are seen rooting through the toilet and holding an evidence bag. They can be heard discussing something they found in the toilet. (State's exhibit 1.)

{¶91} Sergeant Christina Partin also testified. She was working the night of Appellant's arrest. She recalled the other person was in a holding cell and he had refused to change into his "oranges" and threw up on the floor. This other individual was intoxicated and had vomited in a holding cell just before Appellant arrived. Partin used a dustpan and squeegee to clean this mess, and she dumped it in the toilet. She forgot to flush it before Appellant came into the holding area. There were no other arrestees being processed at the time; just the two men. (Tr. 208-209.) This toilet has the flushing mechanism on the outside of the bathroom to prevent an individual from flushing evidence or hiding things.

{¶92} Appellant claims the evidence showed he was not the only person who used the toilet in which the drugs were found, and thus, no reasonable jury would conclude they belonged to him. We disagree.

{¶93} The testimony and video footage depict Appellant using the toilet for an extended period of time immediately before the officers found the baggie containing methamphetamine. The baggie was wrapped in toilet paper and in the toilet. Appellant can be seen unraveling and looping toilet paper around his hand nine times while seated on the toilet before finally being told to finish. The white substance later tested positive

as containing methamphetamine. The evidence shows this other detainee did not use the toilet; instead, an officer disposed of his vomit in the toilet.

**{¶94}** Moreover, one could reasonably infer from Appellant's uncomfortable facial expression, which is readily apparent on the video and made at the same time he is reaching toward the frontside of his groin, was caused by Appellant extracting the baggie from its hidden location. The argument that this baggie of drugs belonged to the other detainee was before the jury, but they evidently did not believe it. We do not disagree with the jury's findings.

**{¶95}** Instead, Appellant's possession of methamphetamine and illegal conveyance of prohibited items onto the grounds of a detention facility convictions are supported by sufficient evidence and not against the manifest weight of the evidence. This assigned error lacks merit and is overruled.

### Conclusion

**{¶96}** For the foregoing reasons, we find the trial court did not err by denying Appellant's motion to suppress or his motion to dismiss based on his right to a speedy trial. Further, we find he was not denied the effective assistance of trial counsel. Finally, Appellant's convictions are not against the manifest weight of the evidence. The trial court's decision is affirmed.

D'Apolito, P. J., concurs.

Hanni, J.concurs.

Case Nos. 21 MO 0008, 21 MO 0009

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**